UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Damon Lamar Campbell,<br><br>　　　　　Plaintiff<br><br>　v.<br><br>Brian Williams, *et al.*,<br><br>　　　　　Defendants | Case No. 2:20-cv-00634-CDS-VCF<br><br>**Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Cross-Motion for Summary Judgment**<br><br>[ECF Nos. 25, 27] |

　　　　Plaintiff Damon Lamar Campbell sues several officials from High Desert State Prison (HDSP), where he was previously housed as an inmate.[1] He brings two claims for relief against defendants Ashcraft, Laurenette,[2] Nash, Williams, McKeekan, and George[3] challenging his conditions of confinement under the Fourteenth Amendment following a fight at the prison on March 25, 2018, where Campbell and two other inmates were pepper sprayed. Campbell also seeks relief under a theory of supervisory liability against defendants Ashcraft, McKeekan, Nash, and Williams.

　　　　Defendants Ashcraft, McKeekan, Nash, and Williams filed a motion for summary judgment on May 18, 2022. ECF No. 27. Campbell filed an opposition and a cross-motion for summary judgment on May 11, 2022. ECF No. 25.[4] The motions are now fully briefed.

---

[1] At the time defendants' motion for summary judgment was filed, Campbell was housed at the Warm Springs Correctional Center. Def. Ex. A, ECF No. 27-1 (Bed History). He is now hosed at Ely State Prison. ECF No. 48.

[2] Laurenette was dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m) on January 1, 2023. ECF No. 51.

[3] The Attorney General's (AG) Office now represents defendant George. They moved to amend their summary judgment motion to add George in as a defendant on March 28, 2023. ECF No. 58. In May, I denied that motion without prejudice and directed them to file a motion setting forth why they were seeking to amend after agreeing to represent George "recently," with no further explanation as to when they decided to represent George. ECF No. 63. To date, no motion has been filed. Thus, the status of George's representation or the AG's intention to continue representing him, or not, is unclear.

[4] These were docketed in reverse order. The court assumes that the delay was caused as a result of this matter being administratively reassigned to me on May 17, 2022. *See* ECF No. 26 (notice of reassignment).

For the reasons set forth herein, I deny defendants' motion for summary judgment based on Campbell's alleged failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA), but grant summary judgment because I find that defendants are entitled to qualified immunity. Because Campbell has no surviving claims; I kindly request that the Clerk of Court enter judgment accordingly and close this case.

I.   Background

The parties agree that there was a fight involving inmates at High Desert State Prison (HDSP) on March 25, 2018. Complaint, ECF No. 1-1[5] at 6 ("On March 25, 2018, plaintiff was attempting to break up a fight between his cellmate…and another inmate[.]"); ECF No. 27 at 3 ("On March 25, 2018 . . . inmates were fighting."). The parties disagree, however, regarding Campbell's involvement. Defendants allege that Campbell was involved in the fight (ECF No. 27 at 3), while Campbell claims that he was attempting to break up the fight. ECF No. 1-1 at 6. Regardless of Campbell's role in the fight, the parties agree that Nevada Department of Corrections (NDOC) officers deployed oleoresin capsicum (OC) spray, which is more commonly known as pepper spray, on the inmates (including Campbell) to help stop the fight. Def. Ex. B, ECF No. 27-2 (Notice of Charges); ECF No. 1-1 at 6. Campbell alleges that he was sprayed all over his entire body. ECF No. 1-1 at 6.

After being sprayed, the inmates, including Campbell were evaluated by medical staff. Def. Ex. B, ECF No. 27-2 at 2; ECF No. 1-1 at 6. Campell was released after the evaluation. The medical report states that there were no signs of injury to Campbell, and Campbell himself denied any pain or need for medical treatment. Def. Ex. C (sealed), ECF No. 27-3 at 2. The medical treatment plan included "DECON IN UNIT." *Id.* Per the complaint, Campbell was then

---

[5] A complaint is not evidence. *See Moran v. Selig*, 447 F.3d 748, 759–60, n.16 (9th Cir. 2006) (An unverified complaint "cannot be considered as evidence."). The court cites to the complaint to provide helpful background information and to show which facts are not in dispute for judicial efficiency purposes. However, in resolving the motion, the court relies only on admissible evidence. *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (holding that a trial court can consider only admissible evidence in ruling on a motion for summary judgment).

given a shower. ECF No. 1-1 at 6. Campbell claims that he was fully clothed during the shower, but he was given a change of clothes when he finished showering. *Id*. Campbell was then transported to prison administration where he was interviewed and then moved to administrative segregation (*id.; see also* Def. Ex. D, ECF No. 27-4 at 2 (3/26/2018 case note that Campbell will be moved to segregation when bed is available and note dated 4/25/2018 noting that Campbell was in administrative segregation)) where he remained until May of 2018. *See id.* at 3.

Campbell alleges that three days following the fight, on March 28, he asked Corrections Officer (CO) Ashcraft to retrieve his personal belongings or, at a minimum, for a towel so he could wash himself off with soap to remove pepper spray he felt on his body, noting that he was experiencing burning, a smell, and a chemical taste all over his body, including his genitals and buttocks; that request was denied. ECF No. 1-1 at 7. The case notes from March 27, 2018 for Campbell state that he was cleared for "exercise/showers/phones as a walk alike inmate only." Def. Ex. D, ECF No. 27-4 at 2–3. Campbell alleges that he made the same request on March 28 to another officer, Laurenette, but that this request was also denied. ECF No. 1-1 at 7. That same day, Campbell submitted two kites to retrieve his personal property, which included a request to take a shower. *See* Def. Ex. E, ECF No. 27-5 (kites). Campbell received the same response to both kites: that his property was rolled up along with the property of other inmates so Campbell would have to go to "property" to separate it out. *Id.*

Campbell sent a third kite on March 29, 2018, advising that he had an upcoming trial date (in June 2018) and that he was having difficulties contacting his lawyer. Def. Ex. F. ECF No. 27-6. He also wrote that he had not showered in five days. *Id.* While difficult to read, it appears that Assistant Warden Nash[6] responded to that kite, writing that Campbell had been provided a towel and instructions on retrieving his property. *Id.* One day later, Campbell submitted an emergency grievance regarding his lack of access to his personal property, his need to access his

---

[6] Defendant Nash also states that Nash was the person who responded to this kite. ECF No. 27 at 4.

legal materials, and the denial of a shower since the time he was rinsed off on March 25, 2018. Emer. Grievance, Def. Ex. G, ECF No. 27-7. The grievance was denied because its contents did not qualify as an "emergency." *Id.* (referencing Administrative Regulation (AR) 740). On March 30, 2018, Campell was offered a shower. Def. Ex. H, Shower Log, ECF No. 27-8. The shower log indicates that Campbell refused the shower at 19:15 hours. *Id.* Campbell argues in his reply that that log does not reflect the reason he declined, which was, that he was unable to shower because he still did not access to soap, a change of underwear, socks, or a towel.[7] ECF No. 36 at 4.

On April 21, 2018, Campbell submitted an informal grievance detailing his requests from March 25–30, 2018. Def. Ex. I, ECF No. 27-9 at 2–5. That grievance also detailed additional information from Campbell, namely that: (1) he was given a towel on April 2, 2018, (2) he was finally taken to retrieve his property on April 3, 2018, which allowed him to put on clean clothes, including underwear, and (3) he was left in his cell for nine days with nothing but a mattress, sheet and blanket, and limited clothing after he had been doused in the pepper spray. *Id.* at 3–4. That grievance was rejected "Per AR 740" which states that "continuation forms (DOC 3097) shall not exceed two (2) pages per grievance." *Id.* at 6. Campbell used three pages. *See id.* at 3–5. Campbell resubmitted his grievance on June 23, 2018, this time only using two continuation pages. *Id.* at 7–8. The NDOC responded on July 20, 2018, stating that the grievance had been "forwarded to the Inspector General's office for further review." *Id.* at 9.

Then, on September 17, 2018, Campbell submitted a First Level Grievance. *Id.* at 10. His grievance was denied, with the opportunity to resubmit, noting that the informal grievance was already pending and that the Inspector General (IG) had 90 days to respond. *Id.* at 11. The 90-day

---

[7] Campbell submitted declarations from prisoners Anthony Reed and Van' Tonio William stating that Campbell did not have access to a towel until April 2, 2018, nor to his personal property until April 3, 2018. *See* ECF No. 25-2 at 37, ¶¶7–8; 38, ¶4.

4

period had not yet expired by the time of the September 17th grievance. On October 24, 2018, Campbell received the following official response to his grievance:

> "Inmate Campbell, your informal grievance was received and the issue reviewed. You have failed to provide supportive information about the allegation. However upon review of reports from staff, review of HDSP Policy after a use of force involving OC, and NOTIS information, you were initially medically evaluated and decontaminated. HDSP policy and practice is such that after decontamination, another set of clothing is provided to the inmate. You were housed in an area of HDSP for a maximum of two days then moved to Ad-seg where upon you were cleared for yard/showers as a walk alike. It seems to be unreasonable that you didn't have clothes for 9 days after the spray if you were cleared for yard in two. Grievance denied."

*Id.* at 12. Campbell re-submitted his First Level Grievance on November 19, 2018, noting that he had provided supportive documentation (to include the kites he submitted) and argued that plain water does not constitute "decontamination." *Id.* at 13–14. On March 27, 2019, that grievance was partially granted by official response. *Id.* at 15. The response stated that the informal response that Campbell received was corrected pursuant to AR 740-03.2. *Id.* It also stated that all allegations of inmate abuse shall be immediately reported to the Warden, Assistant Wardens (AWs), and the Inspector General. *Id.* It further noted that given the seriousness of Campbell's allegations, his First Level Grievance was re-sent to the IG for another review. *Id.*

What happened between March of 2019 and the date of the next report, October 21, 2019, is unclear. The next report provided to the court is dated October 21, 2019. *Id.* at 16. That report states:

> "Your grievance has been reviewed and rejected 4 times for multiple 3098s. This grievance can no longer be responded to as it has been rejected multiple times for being improper. You were given multiple opportunities to correct these errors. THIS GRIEVANCE CANNOT BE RESUBMITTED. If you resubmit this grievance, it will be confiscated and retained in your Inmate Grievance File with no further actions taken."

*Id.* at 16. The court has no information regarding the IG's response to the resubmittal of Campbell's first level grievance.

## II. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## III. Discussion

Defendants argue that they are entitled to summary judgment because Campbell failed to exhaust his administrative remedies pursuant to the PLRA. Def. MSJ, ECF No. 27 at 6–8. They further argue that Campbell cannot meet his burden of demonstrating that he was subjected to cruel and unusual punishment under the Eighth Amendment. *Id.* at 8–13. Last, defendants argue that they are entitled to qualified immunity. *Id.* at 13–15. Campbell opposes defendants' summary judgment motion and seeks summary judgment in his favor, arguing that defendants Ashcraft, McKeekan, and George failed to intervene on his behalf to help alleviate the pain and suffering that he experienced after being left in pepper spray-soiled undergarments and socks for several days following the fight on March 25, 2018. Def. Opp. and Cross-Motion for Summ. Judg., ECF

No. 25-1 at 6–8. Campbell also argues that defendants Nash and Williams ignored his pleas for help, and therefore should be held responsible under a supervisory liability argument. *Id.* at 9–14.

      *A. Campbell exhausted his administrative remedies.*

The Prison Litigation Reform Act requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* In *Porter v. Nussle*, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Supreme Court has determined that "exhaustion in cases covered by § 1997e(a) is now mandatory." *Id.* at 524 (citation omitted). The purpose of exhaustion under the PLRA is to further the efficient administration of justice. Thus, exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue. *Id.* at 90. A prisoner need comply only with the prison's own grievance procedures in order to properly exhaust under the PLRA. *Jones v. Bock*, 549 U.S. 199 (2007).

Grievances filed within the NDOC are governed by AR 740. *See* Def Ex. K, ECF No. 27-11. AR 740 provides descriptions of the purpose of the regulation, the scope of issues that inmates may grieve, the process to which grievances must adhere, and available remedies for successful grievances. *See generally id.* The provisions of AR 740 were effective "on or after the effective date of [the] AR," which in this instance was August 30, 2017. *Id.* at 2.

Specifically, the AR 740 in effect at the time that Campbell filed his first kite provided that its purpose is to "set forth the requirements and procedures of the administrative process that [NDOC] inmates must utilize to resolve addressable grievances and claims including . . . any [] tort or civil rights claim relating to conditions of confinement." *Id.* "An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next

level[.]" *Id.* at 6. The grievance structure is essentially a multi-level dispute resolution mechanism, whereby an inmate must satisfy each level's substantive and procedural requirements before filing a higher-level grievance. *See generally id.* It requires inmates to first pursue resolution via alternative means, such as "discussion with staff" or submitting an inmate request form. *Id.* at 7. Once an inmate has exhausted alternative means, they may file an informal grievance. *Id.* If that fails to provide the requested relief, the inmate may file a first-level grievance, and if that again fails, a second-level grievance. *Id.* at 10–12. If a grievance is "'Granted' at any level, the grievance process is considered complete and the inmate's administrative remedies exhausted, and the inmate cannot appeal the decision to a higher level."[8] *Id.* at 6.

Defendants contend that Campbell failed to exhaust his remedies for grievance # 2006-30-63639. ECF No. 27 at 6–8. Specifically, they argue that 1) Campbell failed to fully grieve his Eighth Amendment claim because he did not detail in particular that he was experiencing "burning" to his body from the OC spray; and 2) Campbell failed to correct the errors in his rejected First Level appeal and did not submit a Second Level appeal. *Id.* at 8. I address these arguments in turn.

Defendants' first argument is unavailing. Indeed, defendants place outsized emphasis on Campbell's failure to detail *one* of his symptoms ensuing from the conduct about which he complained. Prisoners are only required to give detail sufficient to "alert the prison to the nature of the wrong for which redress is sought." *Jones*, 549 U.S. at 219. Campbell's grievances leave no room for doubt as to the nature of the wrong for which he seeks redress: Campbell clearly articulates that he was sprayed with OC spray, that he was "left in a cell with nothing but a mattress, beddings (sheet/blanket), and the boxershort[s] and socks on [his body], after being

---

[8] AR 740 was updated in November of 2018. I take judicial notice of the updated version of AR 740. *See* https://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-%20Inmate%20Grievance%20Procedure%20-%20Temporary%20-%2011.20.2018.pdf (last accessed on September 19, 2023). This version also provided that if a grievance is "Granted" at any level, the grievance process is considered complete and the inmate's administrative remedies exhausted, and the inmate cannot appeal the decision to a higher level. *Id.* at pg. 5.

soaked in pepperspray", without "anything to attempt to clean [himself] with soap or proper shower to remove the existing chemical agent" or its "lingering effects", and that he was starting to "smell extremely bad and can still smell the pepperspray on [his] hands after [he] touch[es] parts of [his] body". ECF No. 27-7; ECF No. 27-9. The prison was thus not only fully alerted to underlying wrong about which Campbell complained—being left without adequate ability to wash himself of the pepper spray's "lingering effects"—but also his discomfort stemming from that wrong—his "extremely bad [smell]." Defendants' argument that the omission of one particular symptom somehow vitiated the validity of the entire grievance in this case is simply without merit.[9]

        Defendants' second argument is contrary to the record. Indeed, the evidence shows that Campbell first attempted resolution via alternative means. *See* Def. Ex. I, Grievance 2006-30-63639, ECF No. 27-9 at 3 (stating that he attempted to talk to Ashcraft and Laurenette about not having his property and needing a towel to remove the lingering effects of the pepper spray). He then submitted an informal grievance.[10] *See* ECF No. 27-9 at 2–5. That informal grievance was rejected for exceeding the page limit. *Id.* at 6. Campbell then resubmitted the informal grievance meeting the requisite page limit. *See id.* at 7–8. NDOC's response to that grievance was "per AR 740 this grievance has been forwarded to the inspector general for further review." *Id.* at 9. Approximately two months later, Campbell submitted a first level grievance, but it was rejected because the 90-day period for the IG's office to respond had not yet run. *Id.* at 10–11 (referencing 90-day policy set forth in AR 740 for allegations referred to the IG's office). On October 24, 2018, that grievance was denied (*see id.* at 12), so Campbell submitted another first level grievance. *Id.* at 13–14. That grievance was **partially granted**. *Id.* at 15 (emphasis added). While the AR discusses the process for sexual abuse allegations that are referred to the Inspector General, it

---

[9] I also note that Campbell's grievances were never rejected for lack of detail nor was he asked to explain what "lingering effects" he was experiencing—the prison had every opportunity to seek further detail had it felt such detail was necessary at the time to better understand the circumstances.

[10] It is concerning to the court that in this grievance Campbell states that he attached kites and an emergency grievance, but none were provided to the court.

provides no further guidance on what do to once Campbell's grievance was partially granted. *See* ECF No. 27-11 at 10–11. The AR does not discuss nor provide any information regarding the process for other types of referrals.

When a prison's grievance procedures are silent or incomplete as to factual specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). More importantly, the Supreme Court held that a prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. *Jones*, 549 U.S. at 218. Without more guidance in the AR, it is unclear how Campbell could have exhausted his administrative remedies. He waited over 90 days for the IG's office to respond. There is no information before the court that any response was ever received. It is defendant's burden to show that an administrative process was available, and that the inmate failed to exhaust it. *Fordley v. Lizarraga*, 18 F.4th 344, 350-351 (9th Cir. 2021). Defendants have failed to proffer evidence or argument sufficient for the court to determine that Campbell failed to exhaust his administrative remedies in this circumstance. Therefore, defendants' summary judgment on this ground is denied.

B.  *Defendants are shielded by qualified immunity.*

Campbell alleges that defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment by failing to allow him to fully shower and to access his personal property so he could put on clean undergarments after he was sprayed with OC. In essence, Campbell is challenging the conditions of his confinement for the seven days following getting sprayed. Defendants oppose the motion and argue that they are entitled to qualified immunity.

The court conducts a two-step inquiry to determine whether a defendant is entitled to qualified immunity. *See Groves v. City of Reno*, 2015 WL 5350099, at *4 (D. Nev. Sept. 14, 2015). First, a court evaluates whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If yes, then the court must determine if the right in question was clearly established at

the time of the defendant's actions, such that any reasonably well-trained official would have known that their conduct was unlawful. *D. C. v. Wesby*, 583 U.S. 48 (2018); *see also Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

In cases alleging cruel and unusual punishment, the court looks to the conditions of confinement to first evaluate whether there is a constitutional violation. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation so that an inmate bringing a challenge to their conditions of confinement must demonstrate that those conditions posed a risk of "objectively, sufficiently serious" harm and that the officials had a "sufficiently culpable state of mind" in denying the proper medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted).

Herein lies the issue with Campbell's claims for relief. In his complaint, he alleges that he requested a towel so he could wash himself off with soap to remove pepper spray he felt on his body, noting that at the time he was experiencing multiple physical ailments including burning, a smell, and a chemical taste all over his body, including his genitals and buttocks—and that this request was denied. *See* ECF No. 1-1 at 7. But the allegations in his complaint are far more detailed than those contained in his kites and grievances wherein he noted that he needed a towel, soap, and a shower to remove "lingering effects" of the pepper spray and argued that rinsing off alone is insufficient to remove "the chemical agent."[11] *See* ECF No. 27-7 at 2; 27-9 at 2,

---

[11] In fact, this violated NDOC's internal policy which requires states that "[a]ll inmates/staff exposed to chemical agents will receive a shower, **unclothed** and a change of clothes." *See* Plf. Ex. A, ECF No. 25-2 at 4 (emphasis added). Campbell only received a **clothed** shower in violation of the policy. Even taking the violation of NDOC's policy into account, there is insufficient evidence to establish a constitutional violation. *See Warren v. Dep't of Corr.*, 2011 WL 1485431, at *7 (W.D. Wash. Mar. 22, 2011), *report and*

4, 7–8, 13; ECF No. 27-12 at 2 (history report dated 7/11/2018), 7 (history report dated 4/21/2018). Campbell did not complain about burning or any other specific aliment as a result of being peppered sprayed in his kites and grievances that he submitted immediately following the March 25, 2018 incident. The most detail he provided was in his March 30, 2018 emergency grievance which stated that he "was starting to smell extremely bad" and that he could "still smell the pepperspray on [his] hands after he touch[s] parts of [his]body." Emerg. Grievance, ECF No. 27-7 at 2. Without more, his complaints did not, and could not, be interpreted as constituting a serious medical need.[12] If such a serious need was present, the "failure to treat [ ] could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Because Campbell only complained of generic "lingering effects" in his kites and grievances, the prison officials had no details from which they could reasonably determine a serious medical need.[13] Consequently, Campbell fails to satisfy the objective component of establishing a claim for cruel and unusual punishment.

---

*recommendation adopted*, 2011 WL 1483347 (W.D. Wash. Apr. 18, 2011) (finding that there was no evidence that a medical decision was made in reckless disregard for a prisoner's condition even where the prison violated its own policies).

[12] I note that the standard of detail in a grievance sufficient to properly alert a prison to the conduct underlying a potential Eighth Amendment claim and the level of detail sufficient to alert a prison of a potential serious medical need may be different, depending on the circumstances. Such is the case here. Campbell's grievances were detailed enough to alert the prison "to the nature of the wrong for which redress is sought"—primarily, the prison's denial of Campbell's ability to adequately wash himself after being sprayed with pepper spray—but not sufficient to alert the prison that a serious medical issue, rather than just discomfort, may be underway.

[13] Even if Campbell had provided additional information, it is unclear if Campbell could establish unnecessary or wanton infliction of pain. *See Wilson v. Tincher*, 2016 WL 676583, at *6 (W.D. Va. Feb. 18, 2016) (granting qualified immunity where the inmate was given the option to shower and refused because the water was not "cool"); *Garcia v. Covello*, 2015 WL 160673, at *8 (C.D. Cal. Jan. 12, 2015) (finding that "[p]epper spray decontamination with hot instead of cold water does not constitute an excessive risk of serious harm"); *Saunders v. Shaw*, 2015 WL 6693744, at *8 (E.D. Va. Oct. 28, 2015) (finding that an inmate's "minor discomfort during the decontamination [with hot water] does not suggest that any reasonable juror could characterize defendants' conduct as a wanton infliction of pain"); *Davis v. Prince*, 2013 WL 588723, at *5 (E.D.N.C. Feb. 13, 2013) (granting qualified immunity because

Campbell also fails to meet the subjective component of an Eighth Amendment claim. That requires that a prisoner demonstrate that the officials (the defendants) had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Liability does not attach for mere negligence. *Frost*, 152 F.3d at 1128. Thus, an "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot []be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Indeed, an "official's conduct must have been 'wanton,'" an evaluation that is based not upon the effect on the prisoner, "but rather, upon the constraints facing the official." *Frost*, 152 F.3d at 1128 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)). Further, prison officials violate their obligation under the Constitution if they intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104–05.

Campbell fails to produce evidence that defendants were aware of the specific conditions he was experiencing after being pepper sprayed. He therefore cannot establish any wanton conduct on behalf of defendants, nor can he establish that there was any intentional denial or delay of needed medical care. And because liability cannot be based on what the officials *should have* known, any argument that the guards should have—but failed to—perceive Campbell's pain and suffering cannot form a basis for liability. Because Campbell has not demonstrated a statutory or constitutional violation beyond any debate, defendants are entitled to qualified immunity and summary judgment in their favor.[14] This determination extends to Campbell's

---

"decontamination was undertaken and a medical evaluation was conducted" after an allegedly hot shower).

[14] Even though the Attorney General's Office never responded to my order regarding defendant George, I nonetheless sua sponte grant summary judgment in his favor because he too is entitled to qualified immunity under Federal Rule of Civil Procedure 56(f). Campbell had an opportunity to be heard on his

claim based on supervisory liability. A supervisory official can liable under § 1983 so long as "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Having already determined that there was no constitutional violation, Nash and Williams are also entitled to summary judgment.

### IV. Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [ECF No. 27] is **GRANTED**.

IT IS FURTHER ORDERED that summary judgment is sua sponte **GRANTED** in favor of defendant George under Rule 56(f) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that plaintiff's cross-motion for summary judgment [ECF No. 25] is **DENIED**.

The Clerk of Court is instructed to enter judgment accordingly and close this case.

DATED: September 26, 2023

_____
Cristina D. Silva
United States District Judge

---

position regarding George's liability in his opposition to the summary judgment, and his own cross-motion.